# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANICQUA SUBER-APONTE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 18-CV-4866 |
| MATTHEW COPLEY, *et al*,<br>    Defendants. | :<br>:<br>: |

## MEMORANDUM

**BEETLESTONE, J.**                                                                        **DECEMBER    , 2018**

On November 9, 2018, *pro se* Plaintiff Shanicqua Suber-Aponte filed this civil action against Matthew Copley, Vincent Hope, Kenneth Schumann, Kathleen Schumann, Keith Costello, Christa Costello, Carson Valley Children's Aid, John Savoth, McCright and Associates, and the Borough of Pottstown. (ECF No. 2.) She also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) By Memorandum and Order entered on November 13, 2018, the Court granted Suber-Aponte leave to proceed *in forma pauperis* and dismissed her Complaint. (ECF Nos. 4, 5.) Specifically, the Court noted that: (1) the Complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure; (2) Suber-Aponte had not stated a claim for relief pursuant to 42 U.S.C. § 1983; and (3) Suber-Aponte had not demonstrated that the Court had subject matter jurisdiction over any state law claims she may be raising. (ECF No. 4 at 3-6.) The Court gave Suber-Aponte leave to file an amended complaint.

The Court received Suber-Aponte's Amended Complaint against the same Defendants on December 6, 2018. (ECF No. 6.) Upon review, the Court concludes that the Amended Complaint fails to cure the defects noted in the initial Complaint. Accordingly, for the following reasons, the Court will dismiss the Amended Complaint.

1

## I. FACTS

In June of 2017, Suber-Aponte rented a residence in Pottstown owned by Keith and Christa Costello. (Am. Compl. at 5.)[1] She alleges that the property was supposed to be inspected by the Borough of Pottstown and McCright and Associates prior to move-in because she was receiving assistance for the security deposit from Carson Valley Children's Aid. (*Id.*) The Costellos "assured [her] that [the] property passed both inspections." (*Id.*)

In July of 2017, Suber-Aponte found that the "ceiling began to leak excessively." (*Id.*) She contacted the Costellos on several occasions with no response. (*Id.*) Suber-Aponte then reported the issue to the Borough of Pottstown and was told that the residence had not been inspected and cleared for occupancy. (*Id.* at 6.) An inspection was done on August 9, 2017, and the residence failed. (*Id.*)

Suber-Aponte complained to a supervisor at Carson Valley because the "inspection report from McCright passing contradicted [the] Borough report of [the] property failing." (*Id.*) After an investigation, the supervisor and a housing coordinator were let go. (*Id.*) A new housing coordinator was assigned to Suber-Aponte. (*Id.* at 7.) She alleges that the Costellos refused to fix the issues at the residence, and therefore Carson Valley stopped payment. (*Id.*)

The Costellos subsequently moved to have Suber-Aponte evicted. (*Id.*) A hearing was held before Magistrate Judge Kropp, during which "Jose, the employee from McCright and the Costellos all falsified information and judg[]ment was in their favor." (*Id.*) Suber-Aponte had to find new housing. (*Id.*)

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

Suber-Aponte moved to another residence in Pottstown, and Carson Valley again assisted her with the security deposit. (*Id.* at 8.) The residence was owned by Matthew Copley. (*Id.*) Suber-Aponte moved in, but the residence did not pass inspection until February of 2018. (*Id.*) She alleges that "upon move in" she complained of a foul smell and rodents. (*Id.*) Carson Valley then removed her from the program "for excessive complaints about dwelling." (*Id.*)

Suber-Aponte alleges that Copley ignored all her complaints about the residence because he was "upset about not receiving additional funds from Carson Valley." (*Id.*) After numerous exterminator visits, Copley began to charge her, and Suber-Aponte refused. (*Id.* at 9.) Copley then sued her "in District Court for fees and multiple times handyman came to property for leaks in [the] basement and kitchen sink." (*Id.*)

Suber-Aponte alleges that court proceedings were scheduled in Red Hill, Pennsylvania even though she lived in Pottstown. (*Id.*) She "immediately requested [a] change of venue and expressed concerns of jurisdiction to the head of District Justices John Savoth." (*Id.* at 9-10.) Her multiple emails and calls went unanswered. (*Id.*) Suber-Aponte was unable to obtain transportation to the hearing, and default judgment was entered in Copley's favor in April of 2018. (*Id.* at 10.)

According to Suber-Aponte, there were still issues with a foul smell and infestation at the residence. (*Id.*) She called the Borough of Pottstown about the issues. (*Id.*) Someone from the Borough told Copley that he "needed to fix certain defects." (*Id.*) Around that time, "it was revealed that leaks in [the] basement were coming from [the] property next door . . . owned by Kenneth and Kathleen Schumann." (*Id.* at 10-11.) The property manager for that residence was Vincent Hope. (*Id.* at 11.) Suber-Aponte alleges that the leak was raw sewage, which caused the carbon monoxide detector to constantly activate. (*Id.*) On one occasion, Suber-Aponte passed

3

out and was hospitalized.  (*Id.*)  She asked Hope and Copley several times to resolve the issues, but neither did anything.  (*Id.* at 12.)  Ultimately, the Borough of Pottstown condemned the property.  (*Id.*)

Suber-Aponte alleges that after "right to know requests," she learned that the Borough had known about these conditions and "did not bother to inform Copley or [her] as a tenant next door."  (*Id.* at 12-13.)  She contends that because of these events, she suffered a broken toe after falling while trying to stuff paper towels in a rotted-out window.  (*Id.* at 13.)  She reinjured the same toe on a broken water sewage cover.  (*Id.*)  Suber-Aponte also suffered from head injuries, increased blood pressure, and emotional distress.  (*Id.* at 18.)

Suber-Aponte indicates she is invoking this Court's federal question jurisdiction to raise claims for violations of her Fourteenth Amendment due process rights, "civil rights discrimination," retaliation, defamation, slander, and libel.  (*Id.* at 2, 15-16.)  She also asserts claims for negligence and violations of the implied warranty of habitability.  (*Id.* at 16.)  As relief, she seeks damages as well as to "reverse [the] decision [of] Carson Valley."  (*Id.* at 18.)

## II.     STANDARD OF REVIEW

As noted above, the Court previously granted Suber-Aponte leave to proceed *in forma pauperis*.  Accordingly, the Court is required, under 28 U.S.C. § 1915(e)(2)(B)(ii), to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory statements and naked

assertions will not suffice. *Id.* As Suber-Aponte is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Pursuant to 42 U.S.C. § 1983

Suber-Aponte alleges that her due process rights under the Fourteenth Amendment have been violated, and that she has been subjected to "civil rights discrimination" and retaliation. Accordingly, the Court construes her Complaint as being brought pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed below, Suber-Aponte's Amended Complaint fails to state a claim for relief.

Suber-Aponte has again named the Borough of Pottstown as a Defendant in this matter. As the Court previously informed Suber-Aponte, to state a claim pursuant to § 1983 against a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Here, Suber-Aponte again fails to include sufficient allegations that a policy or custom of the Borough of Pottstown caused the alleged violations of her rights. Accordingly, Suber-Aponte's claims against the Borough of Pottstown will be dismissed.

Suber-Aponte also sues John Savoth, the "head of District Justices." (Am. Compl. at 10.)[2] She alleges that after receiving notice that landlord-tenant proceedings were scheduled to occur in Red Hill, Pennsylvania, she "immediately requested [a] change of venue and expressed concer[n]s of jurisdiction to" Savoth, but her "request and multiple emails and call went unanswered." (*Id.* at 9-10.) These allegations, however, fail to describe any wrongdoing by Savoth. Moreover, if Suber-Aponte's claims against Savoth arise out of his duties as a court administrator, he is entitled to quasi-judicial immunity for such. *See Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 766 (3d Cir. 2000).

With respect to the remaining Defendants, Suber-Aponte has not stated a claim pursuant to § 1983 against them. As noted above, a plaintiff raising claims pursuant to § 1983 must show, *inter alia*, that the deprivations were caused by a person acting under color of state law. *See West*, 487 U.S. at 48. Whether a defendant is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*,

---

[2] Montgomery County's website indicates that Savoth is the Deputy Court Administrator for Special Courts. *See* https://www.montcopa.org/directory.aspx?EID=541.

589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Here, nothing in the Amended Complaint suggests that the remaining Defendants are state actors. Accordingly, any § 1983 claims against them will be dismissed.

> B. **Claims Pursuant to State Law**

Suber-Aponte's Complaint again raises claims pursuant to state law, such as for negligence, violations of the implied warranty of habitability, and slander, against the Defendants. Because the Court has dismissed Suber-Aponte's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). Here, the Amended Complaint suggests that all the Defendants, as well as Suber-Aponte, are citizens of Pennsylvania. Thus, it appears that complete diversity does not exist. Accordingly, Suber-Aponte has again failed to meet her burden of demonstrating that this Court has subject matter jurisdiction over any state law tort claims she may be raising. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Suber-Aponte's Amended Complaint. Suber-Aponte's claims pursuant to 42 U.S.C. § 1983 will be dismissed with prejudice. Her state law claims will be dismissed for lack of subject matter jurisdiction without prejudice to Suber-Aponte's right to reassert them in state court. Because Suber-Aponte has been given an opportunity to amend and has not alleged a plausible claim for relief over which this Court has jurisdiction, the Court concludes that further attempts to amend would be futile. An appropriate Order follows.

**BY THE COURT:**

**WENDY BEETLESTONE, J.**